781 So.2d 695 (2001)
LOUISIANA HAND & UPPER EXTREMITY INSTITUTE, INC., John T. Knight and Mary Virginia Knight, Plaintiff-Appellant,
v.
CITY OF SHREVEPORT, et al., Defendant-Appellee.
No. 34,404-CA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 2001.
*696 Byram & McCarthy by William E. Byram, Counsel for Plaintiff-Appellant.
Terri Anderson-Scott, Kelly R. Day, Shreveport, Counsel for Defendant-Appellee.
Before NORRIS, GASKINS and CARAWAY, JJ.
NORRIS, Chief Judge.
Dr. and Mrs. John T. Knight, owners of Louisiana Hand & Upper Extremity Institute, appeal a judgment dismissing their negligence claims against all defendants on two motions for involuntary dismissal. For the reasons expressed, we affirm.

Factual background
Dr. Knight, an orthopedic surgeon, opened his hand and upper extremity practice in Shreveport in 1993. By 1996 he was ready to purchase his own office. He called a realtor, Jeanette Kennon with Lea Hall Properties (also referred to as LH Commercial Real Estate Service), for help finding a suitable property. She located a building at 1845 Line Ave. The property was zoned B-2, which allows for the operation of medical and allied services provided the use complies with all applicable ordinances. The structure had 4,400 sq. ft. and shared a driveway with its next door neighbor, Snell's Limbs and Braces. A printout from the listing agent, Coldwell Banker, said the property had 28 parking spaces.
Dr. Knight preferred this building to the others located by Ms. Kennon. He called his hairdresser, John Duggins, who also did home remodeling, to see if the structure could be economically renovated into a medical office. This was feasible and on July 24, 1996 Dr. Knight bought the building for $215,000. Duggins hired a contractor, Ralph Whitley, who secured a building permit for a $48,500 renovation. The project took through September 1996 and ultimately cost nearly $150,000.
Sometime during renovation, Dr. Knight discovered that half of the parking spaces actually belonged to Snell's; however, with a handshake Mr. Snell agreed to let Dr. Knight's patients park on his property. Dr. Knight moved into the renovated office in early October, obtaining a certificate of occupancy from the zoning administrator *697 on November 11. Dr. Knight transferred title of the property to his corporation, La. Hand & Upper Extremity Institute, in December 1996.
Dr. Knight continued using the building until May 1999, when he decided to lease space near Willis Knighton Pierremont. After he left, Willis Knighton expressed interest in buying his old office; however, its appraiser learned that the Line Ave. property did not have enough off-street parking to comply with zoning ordinances. It therefore withdrew its offer to purchase.
Dr. Knight discovered that the City Council had amended the parking ordinance in July 1998. When Dr. Knight was renovating the building, the off-street parking ordinance (# 184 of 1957, ¶ 3(b) as amended) stated that a medical clinic must have one parking space per 150 sq. ft. of leasable floor area or five spaces per practitioner "upon evidence of continuing, low-patient load practice." The zoning administrator, Alan Clarke, testified that although the property had only 18 spaces, he approved Dr. Knight's certificate of occupancy because he assumed that a sole medical practitioner in a narrow specialty would have a low patient count.
The 1998 amendment (codified as Code of Ord. § 106-1338(2)), imposed a requirement of one parking space per 150 sq. ft. of total building area, and deleted the low-patient count exception. Under the new formula, Dr. Knight's office needs 31 off-street parking spaces on the premises; the property apparently has only 18.[1] Dr. Knight applied to the Zoning Board of Appeals for a variance so he might sell the property; this was denied, and Dr. Knight did not appeal.
Dr. Knight initially listed the property for sale as a medical office for $500,000. With no takers, he reduced the price to $225,000 before unlisting it pending the outcome of this litigation.
In December 1998 Dr. Knight, joined by his wife and the corporation, filed the instant suit. The defendants included the City of Shreveport and its Zoning Board of Appeals (collectively, "the City"), and Ms. Kennon, her employer and their insurer (collectively, "Ms. Kennon"). The thrust of the claim against Ms. Kennon was that she breached her duty to find a property suitable for his medical clinic by failing to determine that it complied with zoning ordinances for parking. Ms. Kennon, however, testified that she told Dr. Knight it was his responsibility to confirm with City zoning officials that there was adequate parking; the sales contract specifically placed this burden on the purchaser. She also cited a clause in the sales contract stating that she had made no representations regarding "fitness or stability of the subject property for purchaser's intended use."
Dr. Knight alleged that the City was negligent in issuing building permits and a certificate of occupancy for a project that did not conform to parking ordinances and in granting the "low patient volume" exception without first determining that this applied. In argument before the trial court, counsel denied that Dr. Knight was challenging the constitutionality of the amendment as a taking without just compensation. The City argued that it properly issued the requested permits and certificate of occupancy based on the ordinance as it existed at the time; it followed all normal procedures; and that the amendment did not revoke Dr. *698 Knight's right to use the building as a medical clinic or render the property useless.
At the close of Dr. Knight's evidence, both defendants moved for involuntary dismissal. The District Court granted both motions, and Dr. Knight now appeals. He advances two assignments of error, one addressed to each defendant.

Discussion
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. La. C.C.P. art. 1672 B; Dampeer v. Dampeer, 96-0708 (La.5/3/96), 672 So.2d 176. The trial judge is required to evaluate the evidence and render a decision in accord with the applicable burden of proof. Cupples v. Pruitt, 32,786 (La.App. 2 Cir. 3/1/00), 754 So.2d 328, writ denied 00-0945 (La.5/26/00), 762 So.2d 1108. Thus a judgment of involuntary dismissal is subject to manifest error review. Cupples v. Pruitt, supra; Sallis v. City of Bossier City, 28,483 (La.App. 2 Cir. 9/25/96), 680 So.2d 1333, writs denied 96-2599 (La.12/13/96), 692 So.2d 1063, 96-2592 (La.12/13/96), 692 So.2d 376.
By his first assignment of error Dr. Knight urges Ms. Kennon breached her "specific duty to communicate accurate information to the seller and purchaser" and is thus "liable for negligent misrepresentation." Watkins v. Karr, 97-771 (La.App. 5 Cir. 5/27/98), 716 So.2d 399, writ denied 98-2188 (La.9/2/98), 723 So.2d 423. Specifically, he contends she knew about parking ordinances and failed either to convey this information to Dr. Knight or to see herself if the property complied. This, he asserts, amounted to a misrepresentation. Long v. Bruns, 31,427 (La.App. 2 Cir. 1/20/99), 727 So.2d 664, writ denied 99-0480 (La.4/23/99), 742 So.2d 881, and citations therein. Dr. Knight also urges that the waiver of warranty in the sales contract is unenforceable because "indemnifications from one's own negligence are not favored and should be strictly construed." Polozola v. Garlock Inc., 343 So.2d 1000 (La. 1977).
A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal. La. C.C. art. 2989. A real estate broker may be the mandatary of the buyer, seller or both. La. C.C. art. 3000, Revision Comment (b). The mandatary is bound to fulfill with prudence and diligence the mandate she has accepted; she is responsible to the principal for the loss that the principal sustains as a result of her failure to perform. La. C.C. art 3001. Ultimately, however, the precise duties of a real estate broker are determined by examination of the nature of the task she undertakes to perform and the agreements she makes with the involved parties. Reeves v. Weber, 509 So.2d 158 (La.App. 1 Cir.1987), and citations therein. A purchaser's remedy against a real estate broker is limited to fraud or negligent misrepresentation. Id.
The record shows that Ms. Kennon was retained only by Dr. Knight and was thus a "buyer's agent" in this transaction. La. R.S. 37:1431(26). Thus she owed Dr. Knight the specific duty to communicate accurate information about the transaction, such as any material defects in the premises, of which she was aware. Reeves v. Weber, supra; Latter & Blum Inc. v. Richmond, 388 So.2d 368 (La.1980).
*699 The sales contract prepared by Ms. Kennon and signed by Dr. Knight provides, in ¶ I(J):
This sale is subject to Purchaser obtaining confirmation from the proper zoning authority, verifying that this property is presently properly zoned to permit this property to be used as the location of medical office building. Purchaser shall have thirty (30) days from the date of Purchaser's and Seller's complete acceptance of this contract in which to obtain said confirmation.
Thus the contract clearly places the burden on Dr. Knight to confirm that his intended use of the building complies with all zoning requirements, including parking; Dr. Knight admitted that he took the contract home overnight before he signed it. Ms. Kennon testified that she also told him he was "responsible for getting the correct zoning," which included parking. Dr. Knight admitted that he retained Ms. Kennon to obtain a building suited to his needs and they did not really discuss parking. Moreover, the evidence shows that Dr. Knight was always permitted to use the property as his medical office, just as he intended. On this record, the District Court was not plainly wrong to find that the duty of assuring zoning compliance rested with Dr. Knight, and Ms. Kennon neither breached her duty nor made any negligent misrepresentation.
Further, there is nothing in the record to show that Ms. Kennon knew or should have known that any amendment to § 106-1338(2) was in the offing. We do not find that the real estate broker owes a duty to warn her client about purely speculative future zoning amendments. In short, Ms. Kennon did not breach her general duties to Dr. Knight under La. C.C. art. 3001 or any specific duty under Reeves v. Weber, supra.
Finally, Dr. Knight challenges the waiver of warranty contained in the sales contract, ¶ III:

Unless otherwise stated herein, Purchaser and Seller acknowledge Agent has made no representations, warranties, or recommendations regarding the past or present physical condition of the land or any fixtures, buildings, improvements or component parts thereof located on the Subject Property or regarding the accuracy [of] any information regarding or affecting the Subject Property which may have been given to Purchaser by Agent, * * * or regarding the fitness or stability of the Subject Property for Purchaser's intended use[.] (Emphasis added.)
Any exclusion or limitation of warranty must be clear and unambiguous and must be brought to the attention of the buyer. La.C.C. art. 2548. Although this waiver is broad, it is plainly subject to the limitations of ¶ I(J), quoted earlier. The District Court found that it contained "clear wording," and this is not plainly wrong. See, e.g., Roddy v. Crawford, 618 So.2d 1229 (La.App. 3 Cir.1993). The court further found and that Dr. Knight had the opportunity to review the contract overnight before signing it. There is nothing in the record to contradict this finding. Dr. Knight's first assignment of error lacks merit.
By his second assignment Dr. Knight urges that the District Court erred in dismissing his claims against the City. Specifically, the ordinance governing certificates of occupancy (Code of Ord. § 106-19(e)) requires each application for a certificate to be accompanied by a drawing or plat that shows, inter alia, the site plan and location of off-street parking; he contends that the City never prepared such a drawing or required him to submit one. He further argues that the zoning administrator *700 ignored § 106-1338(2) by failing to make a determination whether Dr. Knight had a low patient load. Had the City complied with these provisions of the ordinances, he urges, he would not have "incurred significant expense and debt in connection with the property."
The record does not show, however, that a drawing or plat was required for the initial permit. Mr. Clarke testified that in issuing a permit for a renovation, the City requires an off-street parking plan only if the renovation will increase the size of the building. A parking plan is required at the end of the process, for the certificate of occupancy. Admittedly, the instant application for a certificate did not require a parking plan; however, a handwritten document in the record[2] shows that Mr. Clarke made a physical inspection of the site and granted the certificate on November 11, 1996, after Dr. Knight had moved into the building. A physical inspection surely served the same purpose as a map or plat. The District Court was not plainly wrong to find that the failure to require a map did not harm Dr. Knight.
Moreover, given the time frame involved, Mr. Clarke's decision to grant the certificate without fully investigating whether Dr. Knight really had a low patient load practice is inconsequential. Had he inquired, he may have learned that Dr. Knight anticipated a high daily volume of patients, both in his office and in his physical therapy center. Since by this time Dr. Knight had already incurred the construction costs, the District Court was not plainly wrong to find that denying the certificate would not have averted his claimed damages.
Finally, Dr. Knight urges that the 1998 amendment to § 106-1338 was a "rezoning" and thus a taking or damaging of his property rights under La. Const. Art. 1, § 4. Palermo Land Co. v. Planning Comm'n of Calcasieu Parish, 561 So.2d 482 (La.1990). While conceding the City's right to regulate land use, he contends that his property was taken or damaged "in a constitutional sense." Williams v. City of Baton Rouge, 98-1981 (La.4/13/99), 731 So.2d 240.
It is well settled that any attack on the constitutionality of a statute or ordinance must be specially pleaded in the trial court and may not be asserted for the first time on appeal. Marler v. Petty, 94-1851 (La.4/10/95), 653 So.2d 1167; Hillman v. Akins, 93-0631 (La.1/14/94), 631 So.2d 1.
Dr. Knight did not plead the unconstitutionality of § 106-1338 and, in argument, counsel advised the District Court that this was not an issue. R.p. 535. Under the circumstances, we need not consider this argument. Marler v. Petty, supra; Roach v. Eagle Water Inc., 31-912 (La.App. 2 Cir. 5/5/99), 737 So.2d 182. We would only note that there is no showing that the amendment fails to advance legitimate governmental interests or that it has denied Dr. Knight any economically viable use of the property. See, Standard Materials Inc. v. City of Slidell, 96-0684 (La. App. 1 Cir. 9/23/97), 700 So.2d 975, citing Agins v. Tiburon, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). This assignment of error lacks merit.

Conclusion
For the reasons expressed, the judgment is affirmed. Costs of appeal are assessed to the plaintiffs, Dr. and Mrs. John T. Knight and Louisiana Hand & Upper Extremity Institute Inc.
AFFIRMED.
NOTES
[1] Mr. Clarke testified, and Dr. Knight states in brief, that the number of spaces is 18. The City's brief states the number of spaces is 13, and the request for variance was for 18 spaces. Br., 4.
[2] This document was attached to a motion for summary judgment filed by Dr. Knight.