MOORE, J.
liThe buyers, Jonathon and Shawna Chumley, appeal three summary judgments that dismissed their claims against the sellers, Darrin and Twila Magee; their buyers’ agent, Frances Harral; and their home inspector, American Dream Home Inspection Services Inc. (“ADHIS”) and its owner, Burl Hines. They also appeal the denial of their motion for new trial. For the reasons expressed, we affirm.

Factual Background

In the summer of 2004, the Chumleys were in the market for a house and noticed an older home for sale at 733 Cecile Place in Shreveport’s South Highlands neighborhood. They retained Ms. Harral as their buyers’ agent and executed a buy/sell agreement on July 10, contingent on a satisfactory inspection of the property. Three days later they signed a “Realtor’s Disclosure,” setting out the realtor’s role and responsibilities.
Through Ms. Harral, the Chumleys obtained an “Informational Statement for Louisiana Residential Property Disclosure” from the Magees. This statement, dated July 13, disclosed that the sellers did not know if the property was in a flood zone, and their lender did not currently require them to carry flood insurance; that the house received a “clear” termite inspection in 1998; that the whirlpool, Jenn-Air cooktop vent and mini-fridge did not work; and that as to the sewer system, “roots occasionally in line from house to street; Roto-Rooter service can fix.” All other items on the form were marked “no knowledge.”
At Ms. Harral’s suggestion, the Chum-leys hired ADHIS to perform a visual inspection of the house. ADHIS’s owner, Hines, inspected it on July [219 in the presence of the Chumleys. ADHIS’s report found, inter alia, some rot on three walls; leaky duct joints and a hole in one *348 of the air conditioner units; loose shingles, for which he recommended replacing the flat roof; leaks around two skylights; uneven areas in the floor; inadequate caulking around the tub; and the nonworking appliances noted by the sellers. The following day, the Chumleys sent the sellers a punch list of necessary repairs, including every item in the ADHIS report.
One week later, the sellers agreed to make several of the requested repairs, such as replacing the rotted walls and recaulking the tub, and offered to pay the Chumleys $1,000 in lieu of the remaining repairs. The Chumleys accepted this offer on July 27, writing on the sellers’ response, “Buyers accept the repairs listed above and prefer the additional $1,000 to lift contingency.” A closing date was set for August 11, but ultimately postponed until August 27.
In the meantime, Ms. Harral ordered a termite inspection in early August. Associates Pest Control found a termite tube on the left side of the house and treated for subterranean infestation. Associates Pest Control’s report was dated August 11 but Ms. Harral did not receive it until the day before the closing.[1]
At the closing on August 27, the Chum-leys received, for the first time, Associates Pest Control’s report noting the termite tube and treatment, but Ms. Harral told them, “Everything’s fíne.” They also testified that at lathis time they learned the house was indeed in a flood zone, necessitating more insurance. Mr. Chumley admitted he could have walked away from the closing, but they nevertheless signed a “Final Reinspection Release,” acknowledging that the “reinspection of above property has been made and conditions are satisfactory and hereby approved” and “Buyers accept the repairs listed above and prefer the additional $1,000 to lift contingency.” The Chumleys completed the closing and took possession of the house, moving in sometime in October 2004.
The Chumleys testified that almost immediately they noticed exorbitant utility bills, which they traced to leaky ductwork. In February 2005, they heard a noise coming from the crawl space under the house; a plumber found a leaking water pipe which he repaired without warranty “due to deterioration of existing water lines; house needs repipe.” Several months later, the main sewer line collapsed, backing up waste into the house and requiring major repairs, during which they had to vacate the house in June 2005. At some point, they also discovered a break in the gas main. Unable to keep up with repair expenses, the Chumleys abandoned the house in late 2005, letting it go into foreclosure. The mortgage lender bought the house at sheriffs sale in June 2006.

Procedural History and Action of District Court

The Chumleys filed this suit in August 2005. They sought damages from the Ma-gees for redhibition, from ADHIS and Hines for a negligent inspection, and from Ms. Harral for negligent misrepresentation and failure to disclose material information about the condition of the house.
All defendants moved for summary judgments, which the Chumleys 1 ¿opposed. ADHIS and Hines argued that the action was barred by the one-year prescriptive period of La. R.S. 9:5608; Ms. Harral asserted that at the time of the closing, she *349 had no more knowledge about the house than the Chumleys, and withheld nothing from them; the Magees contended that the Chumleys failed to tender the house for repairs, as required by La. C.C. art. 2522, and that all alleged defects were either disclosed to, or could have been discovered by, the Chumleys, thus negating their action under La. C.C. art. 2521. In support and opposition, the parties offered numerous documents, including the depositions and/or affidavits of the Chum-leys, Hines and Ms. Harral; the affidavits of the Magees; copies of the buy/sell agreement, informational statement, inspection reports, punch list of requested repairs, final reinspection release and the closing documents.
After a hearing in November 2008, the court granted all three motions for summary judgment, effectively dismissing the Chumleys’ suit. Through new counsel, the Chumleys then moved for a new trial, urging not only that the judgments were contrary to the law and evidence but that there was newly discovered evidence important to the case. This evidence included the depositions of the Magees, their sellers’ agent and the closing attorney; a copy of the seller’s agent’s file; and the Terminix report.
After a hearing in January 2009, the court denied the new trial, noting that all the newly discovered evidence was known to previous counsel and not presented, and that the Chumleys did not establish peremptory grounds for a new trial under La. C.C.P. art. 1672. This appeal followed.

Discussion: Summary Judgment Standard

A motion for summary judgment will be granted “if the pleadings, ^depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966 B. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966 A(2). Appellate courts review a judgment granting or denying a motion for summary judgment de novo. Cutsinger v. Redfern, 2008-2607 (La.5/22/09), 12 So.3d 945. Appellate courts ask the same questions as the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Id.; Smith v. Our Lady of the Lake Hosp., 93-2512 (La.7/5/94), 639 So.2d 730.

Liability of the Real Estate Agent

By their first assignment of error, the Chumleys urge the district court erred in granting all motions for summary judgment. They first argue that Ms. Harral breached several duties: she failed to inform her clients that the house had previously been in foreclosure, failed to inspect the house, failed to advise them of its flood zoning, failed to promptly report the termite inspections, and wrongfully recommended an inspection company. They suggest that absolving Ms. Harral on summary judgment is tantamount to holding that a realtor owes her clients virtually no duty.
Ms. Harral was retained only by the Chumleys and thus was a “buyer’s agent” in this transaction. La. R.S. 37:1431(26). As such she owed the Chum-leys the specific duty to communicate accurate information about the transaction, such as any material defects in the premises, of which Ushe was aware. Louisiana Hand & Upper Extremity Inst. v. City of Shreveport, 34, 404 (La.App. 2 Cir. 2/28/01), 781 So.2d 695; Latter & Blum Inc. v. Richmond, 388 So.2d 368 (La.1980).
*350 Notably, the Chumleys received and signed a realtor’s disclosure which provided, inter alia, that agents “are not the guarantors of performance, condition of property, or representations made by others” and they have, moreover, “no responsibility or expertise to determine or advise whether the property is within the flood plain or as to physical condition of the property.” The summary judgment evidence shows that Ms. Harral accurately disclosed the critical the information she had received from the Magees, that sometime after 1998 their lender advised them the property no longer required flood insurance. By contract she was not required to research the flood zones and, in general, was not required to speculate on potential zoning changes. Louisiana Hand & Upper Extremity Inst. v. Shreveport, supra. There is no genuine issue as to this allegation.
The summary judgment evidence concerning the Terminix report was fairly extensive but convinces us that the seller’s agent ordered this inspection and did not convey it to Ms. Harral. Nevertheless, both Ms. Harral and the Chumleys had the Associates Pest Control report which also disclosed the presence of a termite tunnel on one wall and that the house had been treated with a one-year “retreat guarantee.” Ms. Harral told them, “Everything’s fine,” which appears to be an accurate assessment, even considering both reports. The failure to produce a cumulative report one day sooner did not create a genuine issue of material fact.
As for the other condition issues, Jonathon Chumley testified that he 17read and signed the inspection contract in July 2004 and tailed after Hines during the inspection and that Ms. Harral helped him draw up the list of requested repairs. Ms. Harral testified that she recommended Hines because he was licensed and experienced, reviewed his report with the Chum-leys and negotiated a $1,000 rebate in lieu of certain repairs. On this evidence we find that both Ms. Harral and the Chum-leys had the same facts about the condition of the house. The record simply does not create a genuine issue as to whether she withheld from her clients any information about material defects in the property. This portion of the Chumleys’ argument lacks merit.

Liability of the Home Inspector

The Chumleys next contend the district court erred in finding their claim against ADHIS and Hines prescribed under R.S. 9:5608. They show that this statute, which created the one-year prescriptive period, did not take effect until August 15, 2004, after this inspection occurred. They contend it was a violation of due process to apply the new prescriptive period to their action. In support they cite Cameron v. Bruce, 42,873 (La.App. 2 Cir. 4/23/08), 981 So.2d 204, writ denied, 2008-1127 (La.9/19/08), 992 So.2d 940, in which this court held that the parties cannot by contract shorten a legal prescriptive period. Finally, they urge that Hines performed a deficient inspection report, failing to account for the age of the house or to recommend a more extensive evaluation.
Hines performed his inspection on July 19, 2004, at which time a contract action against a home inspector was considered a personal action regulated by the 10-year prescriptive period of La. C.C. art. 3499. Cameron v. Bruce, supra. On August 15, 2004, La. R.S. 9:5608 took effect, limiting actions against home inspectors, “whether based on tort, breach of contract, or otherwise,” to a prescriptive period of one year from the date of the alleged act, omission or neglect. The Chumleys filed this suit on August 11, 2005, more than one year *351 after the period fixed by R.S. 9:5608 but within the 10 years for a personal action.
Prescriptive limitations relate to the remedy and are usually treated as procedural and applied retroactively. Falgout v. Dealers Truck Equip. Co., 98-3150 (La.10/19/99), 748 So.2d 399, and citations therein. However, prescriptive statutes cannot, consistently with state and federal constitutions, apply retroactively to disturb a person’s preexisting right. Id. When a party acquires a right, either to sue for a cause of action or to defend himself against one, that right becomes a vested property right and is protected by the due process guarantees. Cole v. Celotex, 599 So.2d 1058 (La.1992). Nevertheless, a newly created statute that “shortens existing periods of limitation will not violate the constitutional prohibition against divesting a vested right provided it allows a reasonable time for those affected by the act to assert their rights.” Lott v. Haley, 370 So.2d 521, 524 (La.1979), and citations therein. Obviously, courts will not enforce a new, shorter limitation that effectively extinguishes a claimant’s right of action. Falgout v. Dealers Truck Equip. Co., supra; Lott v. Haley, supra; Zeno v. Lincoln Gen’l Hosp., 376 So.2d 1284 (La.App. 2 Cir.1979).
By contrast, the retroactive application of R.S. 9:5608 still afforded the Chumleys over 11 months in which to assert their claim against ADHIS and Hines. It neither extinguished any vested right nor denied them a | treasonable time to sue. In such circumstances, retroactive application of the shorter prescriptive period is proper. Huffman v. Goodman, 34,361 (La. App. 2 Cir. 4/4/01), 784 So.2d 718, writ denied, 2001-1331 (La.6/22/01), 794 So.2d 791; Patriot American Hospitality Partnership v. Mississippi Land Holdings Inc., 2006-0601 (La.App. 4 Cir. 12/13/06), 948 So.2d 249, writ denied, 2007-0080 (La.3/9/07), 949 So.2d 450. The district court did not err in applying R.S. 9:5608 retroactively in the instant case. This portion of the Chumleys’ argument lacks merit.

Liability of the Sellers

The Chumleys also contend the district court erred in granting summary judgment in favor of the Magees. The Chum-leys assert that just because they had the opportunity to inspect the house before buying it did not absolve the sellers of the duty to disclose the condition of the property or to warrant that repairs made by the sellers were complete. The Chumleys contend the house was “riddled with defects that were not disclosed and which far exceeded superficial cosmetic repairs.”
The seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things. La. C.C. art. 2521; Duplechin v. Adams, 95-0480 (La.App. 1 Cir. 11/9/95), 665 So.2d 80, unit denied, 95-2918 (La.2/2/96), 666 So.2d 1104. A defect is not hidden when it is disclosed by the seller. C.C. art. 2521, Rev. Comment (b).
At the outset we note that on August 27, 2004, the Chumleys signed the final reinspection release. This acknowledged, “Reinspection of above property has been made and conditions are satisfactory and hereby | ^approved” and “Buyers accept the repairs listed above and prefer the additional $1,000 to lift contingency.” In light of this declaration, we find no merit in the claim that the repairs were unsatisfactory or that the Magees failed to perform any of the other repairs on the punch list, such as floor leveling or duct repair.
*352 As for the flood zone designation, the Magees wrote on the disclosure statement, “presently do not know” and “zone change, do not currently have to have coverage.” They offered a letter from their mortgage lender corroborating this. There is simply no summary judgment evidence showing that they misrepresented the flood zone status.
Finally, and without much elaboration, the Chumleys urge that plumbing problems were latent defects, including the water pipe that burst in February 2005, the sewer line that collapsed in May 2005 and a gas leak that occurred at an unspecified time, resulting in major repairs. As noted, the Magees filled out an informational statement with the handwritten notation, “roots occasionally in line from house to street; Roto-Rooter service can fix.” This disclosure placed the Chumleys on notice of recurring problems with the sewer line, satisfying art. 2521. Notably, the house was approximately 60 years old, a fact which should have placed a reasonably prudent buyer on notice of possible deterioration and decay in such an old plumbing system. Conley v. Cupit, 274 So.2d 713 (La.App. 4 Cir.1973). This applies equally to the incoming water and natural gas plumbing. Moreover, the summary judgment evidence does not establish when the gas leak occurred, that it was called to the Magees’ attention, or whether it resulted from general deterioration rather than some other cause.
_jjjThe district court did not err in finding the Magees placed the Chumleys on sufficient notice of these defects. This portion of the argument lacks merit.

Motion for New Trial

By their second assignment of error, the Chumleys urge the district court erred in denying their motion for new trial. While conceding that the grant or denial of new trial is within the trial court’s great discretion, they submit they presented both peremptory and discretionary grounds under La. C.C.P. arts. 1972 and 1973.
A new trial shall be granted, upon contradictory motion of any party, “(1) When the verdict or judgment appears clearly contrary to the law and the evidence. (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial. * * *” La. C.C.P. art. 1972. Although the grant or denial of a motion for new trial rests within the trial court’s wide discretion, the court cannot set aside a judgment if it is “supported by any fair interpretation of the evidence.” Campbell v. Tork Inc., 2003-1341 (La.2/20/04), 870 So.2d 968, and citations therein. For the reasons already discussed, we do not find that the summary judgments rendered in this case are unsupported by any fair interpretation of the evidence. Moreover, despite the rather large (over 750 pages) attachment to the motion for new trial, the Chumleys have not explained in brief why any of this could not have been obtained with due diligence before or during trial.
A new trial may also be granted “in any case if there is good ground therefor, except as otherwise provided by law.” La. C.C.P. art. 1973. Onecióse review, we do not perceive that a miscarriage of justice would result from denying a new trial on this record. Davis v. Wal-Mart Stores Inc., 2000-0445 (La.11/28/00), 774 So.2d 84. This assignment of error lacks merit.

Conclusion

For the reasons expressed, the judgments are affirmed. The plaintiffs, Jonathon and Shawna Chumley, are to pay all costs.
AFFIRMED.
WILLIAMS, J., dissents with written reasons.

. Sometime in July, the sellers' agent (not a party to this suit) ordered a termite inspection from Terminix, which found active termites on the east side of the house at the bathroom. The Terminix report, however, was not disclosed to Ms. Harral or to the Chumleys until after this suit was filed.