TRINA L. CASBON

VERSUS

K.W.E.J., LLC D/B/A
KELLER WILLIAMS REALTY, ET AL.

NO. 23-C-321

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-NINTH JUDICIAL DISTRICT COURT
PARISH OF ST. CHARLES, STATE OF LOUISIANA
NO. 89,478, DIVISION "E"
HONORABLE TIMOTHY S. MARCEL, JUDGE PRESIDING

October 04, 2023

**SCOTT U. SCHLEGEL**
**JUDGE**

Panel composed of Judges Stephen J. Windhorst,
Scott U. Schlegel, and Jason Verdigets, Pro Tempore

**REVERSED; SUMMARY JUDGMENT GRANTED; PLAINTIFF'S**
**CLAIMS AGAINST DEFENDANTS K.W.E.J., L.L.C., D/B/A KELLER**
**WILLIAMS REALTY, TEAM TANGIE, INC., AND JESSICA G.**
**JAMBON DISMISSED WITH PREJUDICE**
    **SUS**
    **SJW**
    **JMV**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/RESPONDENT,
TRINA L. CASBON
    David Greenberg

COUNSEL FOR DEFENDANT/RELATOR,
K.W.E.J., LLC D/B/A KELLER WILLIAMS REALTY, TEAM TANGIE, INC.
AND JESSICA G. JAMBON
    Gus A. Fritchie, III

COUNSEL FOR DEFENDANT/RESPONDENT,
JANIS M. BONURA
    Martin E. Golden

COUNSEL FOR DEFENDANT/RESPONDENT,
METRO APPRAISAL SERVICES AND PAUL G. VIDAL
    Henry M. Weber

**SCHLEGEL, J.**

In this matter, the plaintiff, Trina L. Casbon, claims that she suffered damages because Jessica G. Jambon, her real estate agent, failed to verify the living area square footage before she purchased her first home. More specifically, Ms. Casbon alleges that Ms. Jambon failed to object to the inclusion of an enclosed patio in the living area square footage measurement. Defendants, K.W.E.J., L.L.C., d/b/a Keller Williams Realty, Team Tangie, Inc., and Jessica G. Jambon, request review of the trial court's May 21, 2023 judgment that denied their motion for summary judgment seeking dismissal of all claims raised against them by Ms. Casbon.[1] Defendants argue that they are entitled to summary judgment because they did not owe a duty to Ms. Casbon to verify or investigate the living area square footage of the home. For reasons stated more fully below, we reverse the trial court's judgment, grant summary judgment in favor of defendants, and dismiss Ms. Casbon's claims against them with prejudice.

## FACTS AND PROCEDURAL BACKGROUND

In 2019, Ms. Jambon assisted Ms. Casbon with her purchase of a home located at 192 Rue Landry Road in St. Rose, Louisiana. Ms. Casbon alleges that Ms. Jambon showed her the home multiple times before she made an offer for $400,000.00 on September 23, 2019. The seller, Billy Booth, countered at $410,000.00, and Ms. Casbon accepted. Ms. Casbon's lender then hired Metro Appraisal Services to appraise the home during the inspection period. The October 23, 2019 appraisal report valued the home at $410,000.00 and indicated that the home had 2,912 square feet of living area, which was similar to the square footage

---

[1] At the time of the sale, Ms. Jambon was a licensed real estate agent affiliated with Team Tangie and Keller Williams Realty.

attested to by the seller on the MLS.[2]  Ms. Casbon entered into an act of sale to purchase the home on November 6, 2019.

In February 2021, Ms. Casbon decided to refinance the mortgage in an effort to lower her interest rate.  Unfortunately, the appraisal report that was completed by Bryan Appraisal Services noted a decrease in the home value to $390,000.00 based on the finding that the home only included 2,450 square feet of living area. The report, which was dated February 23, 2021, explained that the appraiser had excluded an enclosed patio from the living area square footage because it did not qualify as living area based on ANSI standards:

> The prior sale of the subject was listed for $429,999, and sold to the current owner.  NOTE: The listing indicates the subject has 2933 sqft (sic) living area. I measured the subject using a laser device. My GLA result is very similar to the listing of the subject when it sold newly constructed: ML#587368, sold 10/6/2005, 2450 sqft (sic) living area. Since that time, the patio area was enclosed. However, as this area is not finished similar to the rest of the home, it does not qualify as living area based on ANSI standards.[3]

On July 21, 2021, Ms. Casbon filed a petition for damages against defendants, as well as Janis Bonura, the sellers' real estate agent, Paul Vidal, who prepared the October 2019 appraisal, and his company, Metro Appraisal Services. Ms. Casbon specifically alleged that Ms. Jambon was negligent because she failed to 1) "confirm the accuracy of the square footage of the living area" and failed to 2) "challenge the inclusion of the 'sunroom' in the square footage calculations of

---

[2] We observe that in a Supplemental Addendum to the 2019 Appraisal, the "Building Measurements" section states that the appraisal meets the "ANSI Z765-2003 measurement guidelines, which were developed by the American National Standards Institute."  The Supplemental Addendum further states:

> Generally, living area must meet these three tests: It must be heated and cooled by a conventional fixed system, it must be finished to neighborhood standards with a ceiling height of at least 7 feet (5 feet for sloped ceilings) and it must be contiguous (one must not pass through non-living area for access).  Secondary sources of living area are given less weight than our own measurements of an improvement.

[3] The appraisal does not identify the specific ANSI provision that the appraiser relied on in reaching this determination. In opposition to the summary judgment motion, Ms. Casbon attached ANSI Z765-2003 (R2013) Square Footage – Method for Calculating, the same standard referenced in the 2019 appraisal. Ms. Casbon cites to the term "Finished Area" provided in this standard, which is defined as an "enclosed area in a house that is suitable for year-round use, embodying walls, floors, and ceilings that are similar to the rest of the house."

the living area." As a result, Ms. Casbon contends that she suffered damages because she paid in excess of the true market value of her home.

On February 8, 2023, defendants filed a motion for summary judgment seeking the dismissal of Ms. Casbon's claims against them. Defendants argued that Ms. Jambon did not have a duty to investigate the living area square footage of the home, nor did she have a duty to determine whether the sunroom was appropriately included in the living area square footage. In fact, they argue, that the duty belonged to Ms. Casbon alone as evidenced by the two documents she signed when she submitted her offer to purchase the home. Defendants specifically point to the Louisiana Residential Agreement to Buy or Sell (Buy/Sell Agreement) and the Property Inspection and Due Diligence Notice (Notice).

The Buy/Sell Agreement, which contained a section explaining the roles of the "Designated Agents,"[4] generally stated that the agents (1) do not make "any warranty of any nature unless specifically set forth in writing," (2) make "no warranty or other assurances whatsoever concerning Property measurements, square footage, room dimensions, lot size, Property lines or boundaries," and that (3) the "BUYER has or will independently investigate all conditions and characteristics of the Property which are important to the buyer." And the Property Inspection and Due Diligence Notice (Notice) contained the following disclaimer:

> Your Designated Agent makes no representations or warranty of the property to include, but not limited to, . . . the measurement of the property including living/total square footage . . . <u>The answers to these and any other questions should be obtained by you from sources other than your Designated Agent that you deem reliable.</u> [Emphasis included in original.]

The Notice also advised Ms. Casbon to perform various inspections, including an inspection to verify the measurements of the total square footage and living area

---

[4] Ms. Jambon is identified at the top of the Buy/Sell Agreement as Ms. Casbon's Designated Agent.

square footage of the home, and that Ms. Jambon was not authorized to measure the property for Ms. Casbon:

> 6) **TOTAL & LIVING SQUARE FOOTAGE OF THE PROPERTY & ROOM MEASUREMENTS**: It is critical to verify these measurements yourself during your inspection period and not rely on information furnished by the seller or any real estate agents including your own Designated Agent. **<u>Your Designated Agent is not authorized to measure the property for you. Measurements must be done either by you or obtained from a third party that you deem qualified.</u>**
>
> * * *
>
> Buyer affirms that the entire contents of this document were explained to Buyer prior to the submission of any offer to purchase a property and that the buyer received a copy of this document immediately after signing it. Buyer releases and holds harmless Buyer's Designated Agent & Broker from any and all liability, loss and cause of action associated in any way whatsoever to the issues, advice and recommendations contained in this document. [Emphasis included in original.]

Finally, defendants pointed to Ms. Jambon's statements in her affidavit explaining that she did not have any discussions with Ms. Casbon regarding the living area square footage and that Ms. Casbon never inquired as whether or not the sunroom was appropriately included in the living area square footage.

In her opposition to the summary judgment motion, Ms. Casbon explained that the home she purchased in 2019 was the first and only time that she purchased real estate. She argued that she conditioned her offer to purchase the home upon its appraisal at $410,000.00 and her ability to obtain financing for eighty percent (80%) of the purchase price. Ms. Casbon argued that as an experienced real estate agent, Ms. Jambon owed her a duty to insure she had accurate information regarding the "classification of the 'interior' of the subject property for the purpose of determination of valuation." Ms. Casbon argued that Ms. Jambon observed the property multiple times and failed to point out that the sunroom was fundamentally different from the rest of the interior of the home and that these differences affected the valuation of the property.

Ms. Casbon acknowledged that the Buy/Sell Agreement and Notice contained language requiring her to verify the square footage measurements. However, she argued that this language did not apply to her claims against Ms. Jambon because she did not allege that a computational error led to her loss. Rather, she argued that the error was the classification of the sunroom as a "finished area" that was included in the living area square footage. She argued that she relied on Ms. Jambon's expertise as a real estate agent to advise her regarding the parts of the home that would qualify as a finished or living area. She contends that because the sunroom was once an exterior area, it has many differences from the rest of the home that Ms. Jambon should have noticed, including brick floors and walls, exterior windows and doors, a Package Thermal Air Conditioner (PTAC) rather than central air conditioning and heating, absence of crown molding, different baseboard materials, and the attic area over ceiling is not insulated. Ms. Casbon argued that Ms. Jambon owed her a duty as a professional real estate agent to alert her that the sunroom differed substantially from the rest of the home and should not have been included in the living area square footage.

The matter came for hearing before the trial court on May 23, 2023. Following oral argument, the trial court denied the summary judgment motion and indicated that genuine issues of material fact existed as to the classification of the sunroom, i.e. "whether it is living area or not living area." The trial court further reasoned that it could not "find as a matter of law that any party is not liable because that issue remains present and unresolved." On May 31, 2023, the trial court entered a written judgment denying defendants' motion for summary judgment. On June 28, 2023, defendants filed a timely application for supervisory writs with this Court.

## LAW AND DISCUSSION

The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action and is favored. La. C.C.P. art. 966(A)(2). Appellate courts review summary judgments *de novo* under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Jefferson Par. Sch. Bd. v. TimBrian, LLC*, 21-67 (La. App. 5 Cir. 10/20/21), 362 So.3d 691, 693-94, *writ denied*, 21-1725 (La. 1/12/22), 330 So.3d 629. Summary judgment shall be granted "if the motion, memorandum, and supporting documents shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

The party moving for summary judgment bears the burden of proof. La. C.C.P. art. 966(D)(1). However, if the mover will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party's claims. *Id*. Thereafter, the burden shifts to the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id*.

The issue before this Court is whether the buyer's real estate agent, Jessica Jambon, owed a duty to Ms. Casbon to inform her that the enclosed sunroom was different than the rest of the home and that it may not be included in the living area square footage of the home plaintiff was purchasing. A real estate broker is a professional who holds herself out as trained and experienced to render a specialized service in real estate transactions. The broker stands in a fiduciary relationship to his client and is bound to exercise reasonable care, skill, and diligence in the performance of his duties. *Hughes v. Goodreau*, 01-2107 (La. App. 1 Cir. 12/31/02), 836 So.2d 649, 660, *writ denied*, 03-232 (La. 4/21/03), 841

So.2d 793.  A purchaser's remedy against a real estate broker is limited to damages for fraud (intentional misrepresentation) under La. C.C. art. 1953, or for negligent misrepresentation under La. C.C. art. 2315.  *Smith v. Remodeling Serv.,* 94-589 (La. App. 5 Cir. 12/14/94), 648 So.2d 995, 1000.  Negligent misrepresentation occurs when there is a legal duty to supply the correct information and a breach of that duty resulting in damages to the plaintiff.  *Rabalais v. Gray*, 14-552 (La. App. 5 Cir. 12/16/14), 167 So.3d 101, 107.[5]

La. R.S. 9:3893 explains the duties of a real estate agent representing a client:

A. A licensee representing a client shall:

(1) Perform the terms of the brokerage agreement between a broker and the client.

(2) Promote the best interests of the client by:

(a) Seeking a transaction at the price and terms stated in the brokerage agreement or at a price and upon terms otherwise acceptable to the client.

(b) Timely presenting all offers to and from the client.

(c) Timely accounting for all money and property received in which the client has, may have, or should have had an interest.

(3) Exercise reasonable skill and care in the performance of brokerage services.

La. R.S. 9:3893(D) further provides that a "licensee shall not be liable to a client for providing false information to the client if the false information was provided to the licensee by a customer unless the licensee knew or should have known the information was false."[6]  In *Romano v. GBS Properties, LLC*, 07-1102, p. 3  (La. App. 4 Cir. 3/5/08), 2008 WL 8922904, the appellate found that pursuant

---

[5] Ms. Casbon does not allege a fraud claim against defendants.
[6] La. R.S. 9:3891(4) defines a client as "one who engages the professional advice and services of a licensee as his agent."  La. R.S. 9:3891(7) defines a customer as "a person who is not being represented by a licensee but for whom the licensee is performing ministerial acts."

to La. R.S. 9:3893(D), a buyer's agent did not owe a duty to verify or investigate the accuracy of zoning information provided by the seller.

The applicable law further provides that a buyer's agent owes a specific duty to communicate accurate information about the transaction to the buyer. *Chumley v. Magee*, 44,860 (La. App. 2 Cir. 2/17/10), 33 So.3d 345, 349, *writ denied*, 10-1125 (La. 9/17/10), 45 So.3d 1046; *Trés Chic in a Week, LLC v. The Home Realty Store*, 07-1373 (La. App. 1 Cir. 7/17/08), 993 So.2d 228, 232. The duty to disclose any material defects only extends to defects of which the buyer's agent is aware. *Id*. Ultimately, the precise duties of a real estate agent must be determined by an examination of the nature of the task the agent undertakes to perform and by the agreements the agent makes with the involved parties. *Cousins v. Realty Ventures, Inc.*, 01-1223 (La. App. 5 Cir. 1/14/03), 844 So.2d 860, 868, *writ denied*, 03-1583 (La. 10/3/03), 855 So.2d 316 and 03-1584 (La. 10/3/03), 855 So.3d 317; *Trés Chic*, 993 So.2d at 232.

In the present matter, the agreements entered into between Ms. Casbon and defendants show that Ms. Jambon did not owe a duty to Ms. Casbon to verify the accuracy of the living area square footage listed by the sellers and their agent. Rather, the governing agreements shifted the burden to Ms. Casbon to hire a third party to verify the accuracy of the total and living area square footage of the home during the inspection period. The Buy/Sell Agreement notified Ms. Casbon that defendant did not provide any warranties or representations regarding the accuracy of the square footage of the home. And the Notice explained that Ms. Jambon was not authorized to measure either the total or the living area square footage and that Ms. Casbon would need to obtain an inspection to verify these measurements.

*Trés Chic*, *supra*, involved a similar scenario where the MLS listing for the property at issue incorrectly listed the total square footage of the home as the living area square footage. The home buyers argued that the agent representing them was

liable because her agency previously listed the home for sale five years prior to their purchase and therefore, should have known the living area square footage provided in the listing was inaccurate. The appellate court recognized that language in a similar buy/sell agreement placed the burden on the buyer to determine the accuracy of the square footage and therefore, the buyer's agent was not liable. *Id*. at 235.

Ms. Casbon attempts to avoid summary judgment dismissal by arguing that the documents she signed did not relieve Ms. Jambon of the duty to object to the inclusion of the sunroom in the living area square footage because the documents only addressed measurements and not the classification of the rooms. This argument is a distinction without a difference. The determination of the measurements of the total square footage of the home versus the living area square footage inherently requires an analysis of the areas of the home that may qualify as living area. In fact, the ANSI standard that Ms. Casbon attached in support of her opposition, Square Footage – Method for Calculating: ANSI Z765-2003 (R2013), states that "[t]his standard describes the procedures to be followed in measuring and calculating the square footage of detached and attached single-family houses," and provides that the process of measuring and calculating involves determinations regarding the areas of the home that qualify as finished or living areas.

Furthermore, the applicable law outlined above only requires agents to disclose material defects of which the agent is aware and does not require independent investigation of all disclosures provided by the property sellers. Ms. Casbon did not provide any positive evidence that Ms. Jambon was aware that a potential issue existed regarding the accuracy of the living area square footage of the home. Rather, Ms. Casbon provided a copy of the appraisal obtained by her lender establishing the exact opposite – that the living area square footage was 2,912 based on the application of ANSI Z765-2003 (R2013) – similar to the living

area square footage advertised by the sellers.  Based on the foregoing, we find that Ms. Casbon failed to establish that Ms. Jambon owed her a duty that was breached.

**DECREE**

Accordingly, we find that the trial court erred by denying the motion for summary judgment filed by defendants, K.W.E.J., L.L.C., d/b/a Keller Williams Realty, Team Tangie, Inc., and Jessica G. Jambon.  We reverse the trial court's judgment, grant defendant's motion for summary judgment, and dismiss plaintiff Trina Casbon's claims against defendants, with prejudice.

**REVERSED; SUMMARY JUDGMENT GRANTED; PLAINTIFF'S CLAIMS AGAINST DEFENDANTS K.W.E.J., L.L.C., D/B/A KELLER WILLIAMS REALTY, TEAM TANGIE, INC., AND JESSICA G. JAMBON DISMISSED WITH PREJUDICE**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **OCTOBER 4, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-C-321

### E-NOTIFIED
29TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE TIMOTHY S. MARCEL (DISTRICT JUDGE)
DAVID GREENBERG (RESPONDENT)          GUS A. FRITCHIE, III (RELATOR)

### MAILED
MARTIN E. GOLDEN (RESPONDENT)          HENRY M. WEBER (RESPONDENT)
ATTORNEY AT LAW                        ATTORNEY AT LAW
701 MAIN STREET                        701 POYDRAS STREET
BATON ROUGE, LA 70802                  SUITE 4000
                                       NEW ORLEANS, LA 70139