974 So.2d 190 (2008)
Dennis BRANTON and Dorothy Branton, Plaintiffs-Appellants,
v.
Todd A. MADDOX and Maddox & Hughes Insurance Agency, Inc., and ABC Insurance Company, Defendants-Appellees.
No. 42,853-CA.
Court of Appeal of Louisiana, Second Circuit.
January 9, 2008.
*191 Jeff R. Thompson, Bossier City, Pettiette Armand, Dunkelman, Woodley, Byrd & Cromwell, L.L.P., Shreveport, by S. Michael Cooper, for Plaintiffs-Appellants.
Ungarino & Eckert, L.L.C. by Brian D. Smith, Shreveport, Karen Godail Arena, Matthew J. Ungarino, Metairie, for Defendants-Appellees.
Before STEWART, GASKINS and MOORE, JJ.
GASKINS, J.
This suit against an insurance agent and his agency concerns a homeowner's policy issued to cover a house in New Orleans; the house flooded during Hurricane Katrina in 2005. The plaintiffs appeal from a trial court judgment granting the defendants' exception of peremption. We affirm.

FACTS
In May 2002, Dennis and Dorothy Branton, who live in Bossier Parish, bought a house for their daughter in New Orleans. They sought insurance for the house through the Maddox & Hughes Insurance Agency, Inc., a Louisiana corporation domiciled hi Bossier Parish; this agency had handled the plaintiffs' insurance needs for many years. They dealt with Todd Maddox, a licensed property and casualty insurance agent. The plaintiffs paid the premiums for the policy secured by Maddox.
*192 In August 2005, flooding after Hurricane Katrina damaged the house purchased by the Brantons for their daughter. They were informed that the policy did not provide coverage for the loss sustained.
On August 28, 2006, the Brantons filed suit against Mr. Maddox and the agency, as well as the unknown insurer who provided errors and omissions liability insurance for the other defendants. They alleged that they relied upon the defendants to identify and insure their property from risks of damage or loss.
On February 13, 2007, the defendants filed an exception of peremption in which they asserted that the plaintiffs' cause of action was perempted by the periods of one and three years set forth in La. R.S. 9:5606.
In April 2007, the plaintiffs filed a response in which they alleged that on May 12, 2005, the annual insurance protection provided on their property came up for review, reassessment and identification of risks, and that they relied upon the defendants to identify and insure the property against all risks. The plaintiffs attached Mr. Maddox's deposition.
The exception was submitted to the trial court on briefs in April 2007. It issued a written opinion and order in which it granted the exception. The court found that the three-year peremptive period began to run from the date of the original policy. It ruled that the law is clear that the alleged act, omission or neglect must have occurred within three years of when the policy was initially issued. The court stated that it found no support in the jurisprudence for the plaintiffs' argument that the peremptive period did not begin until the date of the last renewal.
The plaintiffs appeal.

LAW
La. R.S. 9:5606 provides:
A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
C. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.
D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
Generally, subsequent renewals of insurance policies "do not operate to restart peremption." White v. Allstate Insurance Company, 513 F.Supp.2d 674 (E.D.L a.2007). See Bel v. State Farm Mutual Automobile Insurance Co., XXXX-XXXX (La.App. 1st Cir.2/14/03), 845 So.2d 377, writ denied, XXXX-XXXX (La.5130/03), 845 So.2d 1057; Biggers v. Allstate Insurance Company, 04-282 (La.App. 5th *193 Cir.10/26/04), 886 So.2d 1179. However, renewals can be the basis of separate torts, if the complained of conduct constitutes separate and distinct acts, which give rise to immediately apparent damages. Fidelity Homestead Association v. Hanover Insurance Company, 458 F.Supp.2d 276 (E.D.La.2006); Bel, supra; Biggers, supra. The inquiry is whether the actions of the insurance agent at the time of renewal can be construed to constitute an act separate from the initial policy procure`ment. White, supra.
Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period. La. C.C. Art. 3458. Peremption may not be renounced, interrupted, or suspended. La. C.C. Art. 3461.
Under Louisiana law, an insured has a duty to read his insurance policy and know its provisions. Fidelity Homestead Association, supra.
DEPOSITION TESTIMONY
The Brantons submitted Todd Maddox's deposition in opposition to the defendants' exception of peremption. Mr. Maddox testified that the Brantons were clients of the agency for whom they wrote both commercial lines and personal lines of insurance. The commercial lines included coverage for commercial auto, commercial property, general liability, and workers' compensation. Among the personal lines were homeowner's, personal auto, classic auto, real estate, motorcycle and personal umbrella coverage. The annual premiums paid by the Brantons in the commercial lines were at least $100,000; in the personal lines, their annual premiums were between $10,000 and $15,000. Based on premium dollars, Mr. Maddox testified, the Brantons were considered "significant customers" who received special attention by the agency.
Mr. Maddox indicated that in connection with the renewal of the commercial line policies, he had contact with them in the weeks before the renewal to make any necessary changes and update information on things such as payroll and receipts. However, as to the renewals for the personal lines, he did not meet with them in the weeks prior to renewal. He said this was because items were not likely to change in the personal lines as they did with the commercial lines. According to Mr. Maddox, the risk assessment for the personal lines was primarily done when the policy was first obtained.
As to the insurance on the New. Orleans house, he had no memory of reviewing the risks or policies at any renewal period after the policy was first issued. After Hurricane Katrina, he recalled speaking to Mrs. Branton the policy showed hurricane coverage, which meant wind damage and water damage due to wind damage. They spoke about the hurricane coverage again after the levee broke.[1]
He subsequently attended a meeting at the Brantons' office; they were upset that the insurance company had sent them a check for only between $10,000 and $12,000. He advised them that this was probably for the wind damage to the house. During the meeting, Mrs. Branton indicated that she had asked for flood insurance; he responded that she had not. According to Mr. Maddox, Mrs. Branton stated that she had and that they had told her either they, could not provide it or it could not be bought. Mr. Maddox testified *194 that he informed Mrs. Branton that they would not have made such a statement; instead, they would have told her that they needed an elevation certificate before they could provide a quote on flood insurance.
Mr. Maddox further testified that he did not recall any conversation with the Brantons about wanting flood insurance for the New Orleans house. If they had desired that sort of coverage, it would have been standard practice of the agency to request an elevation certificate from the Brantons. He also testified that he never advised them to obtain separate insurance coverage for flood risk. Nor did he make a subsequent recommendation to do so after the policy was first issued. Mr. Maddox also testified that the homeowner's policy on the Brantons' house in New Orleans was the only one issued in Orleans Parish by the agency.

DISCUSSION
If the policy on the New Orleans house was simply renewed without discussion, the subsequent renewals were nothing more than "a continuation of the ill effects of an original unlawful act" with no further opportunity for the agency to make misrepresentations about the policy. Bel, supra; Biggers, supra. However, courts have refused to uphold peremption when there were annual discussions pertaining to coverage [Southern Athletic Club, LLC v. Hanover Insurance Company, 2006 WL 2583406 (E.D.La.2006), and Fidelity Homestead Association, supra]; when changes requested in the last three years were not made [Rivera v. State Farm and Casualty Company, 2007 WL 763633 (E.D.La.2007)]; and when there were annual requests forand denial of additional coverage [Sonnier v. Louisiana Farm Bureau Mutual Insurance Co., XXXX-XXXX (La.App. 3d Cir.3/1/06), 924 So.2d 419, writ denied, XXXX-XXXX (La.5/26/06), 930 So.2d 33]. The courts concluded that these acts might be construed as constituting separate and distinct acts from the original issuance of the policies involved.
The deposition testimony of Mr. Maddox indicated that no annual meetings were conducted as to the personal lines of insurance procured by his agency for the Brantons. Rather, the annual meetings with the Brantons pertained to the commercial lines of insurance; these business-related policies were more likely to require adjustments, due to such things as changes in their company's payroll. Under the circumstances presented in this case, we are obliged to find, as did the trial court, that the three-year peremptive period set forth in La. R.S. 9:5606 commenced when the original policy was issued in 2002. Since suit was not filed until 2006, the Brantons' claims against the defendants were perempted and extinguished.

CONCLUSION
The trial court judgment granting the defendants' exception of peremption is affirmed. Costs of this appeal are assessed against the appellants, Dennis and Dorothy Branton.
AFFIRMED.
NOTES
[1] This is not a lawsuit' on whether the hurricane coverage should also cover the flood damage. It is solely a claim against the insurance agent, the agency, and the company that insured the agency.