JUDE G. GRAVOIS, Judge.
| i>Plaintiffs/appeIlants, Kenneth J. Raba-lais, Jr. and Jennifer Ann Vaught Raba-lais, appeal the trial court’s grant of summary judgment in favor of defendants/appellees, Susan Hurth Price and GBS Properties, L.L.C. d/b/a Prudential Gardner Realtors (“Prudential Gardner”), finding Ms. Price and Prudential Gardner not liable to plaintiffs for an alleged negligent misrepresentation of fact made by *104 Ms. Price to plaintiffs in connection with a real estate transaction, and dismissing all claims against Ms. Price and Prudential Gardner. For the reasons that follow, we affirm the trial court’s grant 'of summary judgment.

FACTS

In the summer of 2007, plaintiffs approached Denver Gray and Patricia Gray through their real estate agent, Susan Hurth Price,[1] about purchasing the Grays’ residential property located at 620 North-line Street in Metairie, Louisiana. The property had flooded and was damaged as a result of Hurricane Katrina, which struck the New Orleans area on August 29, 2005. Mr. and Mrs. Gray were living in North Carolina at the time. They remained in North Carolina following the |sstorm and did not return to New Orleans until over a year later. The Grays, who were respectively 81 and 73 years old at the time, decided not to repair the damages to their Northline residence caused by Hurricane Katrina, it being too substantial an undertaking for them given their ages. They eventually decided to sell the Northline property. In 2007, Mrs. Gray approached a real estate agent friend of hers to list the Northline property for sale, but as her friend was then retired, she recommended that Mrs. Gray contact Ms. Price. Mrs. Gray testified in deposition that she never met Ms. Price face-to-face; rather, they conducted all of their business over the phone or by fax.[2] Plaintiffs showed serious interest in the North-line property and the parties eventually agreed upon a price of $950,000.00 for the property in its “as is” condition. The sale was consummated on September 20, 2007.[3]
On December 13, 2011, plaintiffs filed suit against Mr. and Mrs. Gray, Ms. Price, as their real estate agent, and her agency, Prudential Gardner, alleging fraud (intentional misrepresentation) and negligent misrepresentation, when they learned that the Northline property they had purchased from Mr. Gray[4] in 2007 was not eligible for Louisiana Road Home Program benefits because it was covered by flood insurance at the time Hurricane Katrina struck the New Orleans area. Plaintiffs alleged that Ms. Price had represented to them that the property had no flood insurance coverage when Hurricane Katrina struck, a fact that plaintiffs allege was a substantial factor in their decision to purchase the Northline property, because such lack of flood insurance coverage would have supposedly allowed them to collect up to $130,000.00 in Road Home benefits for repairs to the | property caused by Hurricane Katrina flooding.[5] When plaintiffs applied for Road Home benefits for the Northline property, their application was denied when it was determined that the property indeed had flood insurance coverage when Hurricane Katrina struck, for which Mr. Gray had actually made a claim *105 and had actually received flood insurance proceeds.[6]
Mrs. Gray testified in deposition that she was not aware of any flood insurance coverage on the Northline property and believed that there was no flood insurance coverage on the property. She testified that she was unaware of any flood insurance claim of any kind made on the North-line property and did not know that Mr. Gray had received flood insurance proceeds on the property for Hurricane Katrina flood damage. She stated that she did not remember telling Ms. Price this, but stated that she may have done so.
Ms. Price testified in deposition that Mrs. Gray told her that there was no flood insurance coverage on the property for Hurricane Katrina flood damage, and that she told this to plaintiffs, not knowing that this information was false.
In their suit, plaintiffs alleged that the availability of Road Home benefits was a primary inducement for their purchase of the Northline property, and that they would not have consented to purchase the property had they known that such benefits were not available.[7] Plaintiffs sought monetary damages rather than rescission of the contract of sale, recognizing that rescission of the contract of sale was impossible and/or impractical at that point in time.
1 fjFollowing discovery, Ms. Price and Prudential Gardner filed a motion for summary judgment, claiming that the depositions of the parties revealed that there was no fraud or intentional misrepresentation by them of the fact of the home’s lack of flood insurance coverage. They further argued that under La. R.S. 9:3894(B), they cannot be held liable for negligent misrepresentation for conveying information to plaintiffs that was given to them by their clients that they did not have actual knowledge was false. They introduced excerpts from Ms. Price’s and Mrs. Gray’s depositions showing that Ms. Price received her information about the property’s prior flood insurance coverage solely from Mrs. Gray. They further asserted that plaintiffs cannot produce any evidence to show that they had actual knowledge that such information received by them from their clients was false prior to providing such information to plaintiffs. Following a hearing on the motion for summary judgment, the trial court granted summary judgment in favor of Ms. Price and Prudential Gardner, dismissing all claims against them.[8] This timely appeal followed.

ANALYSIS

Appellate courts review a district court’s grant of summary judgment de novo, viewing the record and all reasonable in *106 ferences that may be drawn from it in the light most favorable to the non-movant. Bourgeois v. Boomtown, LLC of Delaware, 10-553 (La.App. 5 Cir. 2/15/11), 62 So.3d 166, 169. A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show that there is no | (¡genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966.
A material fact is one that potentially insures or prevents recovery, affects a litigant’s ultimate success, or determines the outcome of the lawsuit. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 751. An issue is a genuine issue if it is such that reasonable persons could disagree; if only one conclusion could be reached by reasonable persons, summary judgment is appropriate, as there is no need for trial on that issue. Id. Whether a particular fact is material can be,seen only in light of the substantive law applicable to the case. Hubbard v. Jefferson Parish Parks and Recreation, 10-24 (La.App. 5 Cir. 5/25/10), 40 So.3d 1106, 1110.
Summary judgment procedure is intended to make a just and speedy determination of every action. La. C.C.P. art. 966. It is favored and the procedure shall be construed to achieve this intention. Id. Under La. C.C.P. art. 966, the initial burden is on the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense, the non-moving party then must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. La. C.C.P. art. 966(C)(2). If the non-moving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La. C.C.P. arts. 966 and 967; Paternostro v. Wells Fargo Home Mortg., Inc., 09-469 (La.App. 5 Cir. 12/8/09), 30 So.3d 45, 47-48.
| ^ASSIGNMENT OF ERROR NO. ONE

Trial court use of “incorrect argument” as the basis for its judgment

In their first assignment of error, plaintiffs argue that the trial court erred by granting summary judgment based solely on defendants’ “incorrect argument” that La. R.S. 9:3894(B) provides the only remedy available for a purchaser seeking damages from a real estate agent who communicated false information.
Upon review, we find no indication in the record that an “incorrect argument” was the basis for the trial court’s ruling under review. To the extent that plaintiffs base their argument on the trial court’s reasons for judgment, we note that the trial court’s judgment and reasons for judgment are two separate and distinct legal documents. Appeals are taken from the judgment, not the written reasons for judgment, which form no part of the judgment. Royal Oldsmobile Co. v. Heisler Props., L.L.C., 12-608 (La.App. 5 Cir. 05/16/13), 119 So.3d 84, 90, citing Wooley v. Lucksinger, 09-0571 (La.4/1/11), 61 So.3d 507, 572. Thus, notwithstanding any reasons for judgment given by the trial court as a basis for its judgment, a court of appeal may affirm a judgment for different reasons if the result is correct. Wooley v. Lucksinger, supra.
A purchaser’s remedy against a real estate broker is limited to damages for fraud (intentional misrepresentation) under La. C.C. art. 1953, or for negligent misrepresentation under La. C.C. art. 2315. Smith v. Remodeling Serv., 94-589 *107 (La.App. 5 Cir. 12/14/94), 648 So.2d 995, 1000. Negligent misrepresentation occurs when there is a legal duty to supply the correct information and a breach of that duty resulting in damages to the plaintiff. Leflore v. Anderson, 537 So.2d 215, 218 (La.App. 4 Cir.1988), citing Josephs v. Austin, 420 So.2d 1181, 1185 (La.App. 5 Cir.1982). Though plaintiffs pleaded both fraud (intentional misrepresentation) and negligent misrepresentation, the focus of plaintiffs’ [^arguments in this appeal is the issue of Ms. Price’s alleged negligent misrepresentation.
Louisiana Revised Statutes 9:3894 provides:
A. Licensees shall treat all customers honestly and fairly and when representing a client in a real estate transaction may provide assistance to a customer by performing ministerial acts. Performing those ministerial acts shall not be construed in a manner that would violate the brokerage agreement with the client, and performing those ministerial acts for the customer shall not be construed in a manner as to form a brokerage agreement with the customer.
B. A licensee shall not he liable to a customer for providing false information to the customer if the false information was provided to the licensee by the licensee’s client or client’s agent and the licensee did not have actual knowledge that the' information was false.
(Emphasis added.)
Plaintiffs are correct in their assertion in brief that a cause of action against a real estate agent for negligent misrepresentation “survives” the adoption of La. R.S. 9:3894 in 1997. See, e.g., Connell v. Davis, 06-9 (La.App. 5 Cir. 10/17/06), 940 So.2d 195. However, contrary to plaintiffs’ argument in this assignment, La. R.S. 9:3894(B) does not eliminate or undermine all causes of action against real estate agents for negligent misrepresentation. It merely provides that a licensee (here, Ms. Price, as a real estate agent) shall not be liable to a customer (here, plaintiffs, as the real estate purchasers) for providing false information to the customer if the false information was provided to the licensee by the licensee’s client or the client’s agent (here, Mrs. Gray, as Mr. Gray’s agent) and the licensee did not have actual knowledge that the information was false. No more, no less. Causes of action for negligent misrepresentation that do not fall into this particular scenario are and will continue to be viable and prosecutable.
This assignment of error is without merit.
1 ASSIGNMENT OF ERROR NO. TWO

Burden of proof on summary judgment

In their second assignment of error, plaintiffs argue that the trial court erred by granting summary judgment in favor of defendants because defendants failed to carry their burden of proof regarding plaintiffs’ claim for negligent misrepresentation. In this assignment, plaintiffs argue that the trial court ruled against them, incorrectly, because they failed to present direct evidence that Ms. Price had “actual knowledge” that the Grays had flood insurance coverage on the property at the time she told them that no such flood insurance coverage existed.
As noted above, what La. R.S. 9:3894(B) does, as evidenced by a plain reading thereof, is protect an agent from being found liable to a customer for negligent misrepresentation under a very specific circumstance: when an agent receives *108 false information from a client that he or she (the agent) did not have “actual knowledge” to be false and in turn provides that false information to a customer.
The evidence in this case, particularly the excerpts from Ms. Price’s and Mrs. Gray’s depositions, shows that while Mrs. Gray did not specifically remember telling Ms. Price that there was no flood insurance coverage on 'the Northline property, she acknowledged that she probably did tell this to Ms. Price. Mrs. Gray testified that she did not handle any insurance matters regarding the Northline property, either before or after Hurricane Katrina. Evidence was introduced of a suit that was filed by Mr. Gray individually seeking additional insurance proceeds on the North-line property for Hurricane Katrina flood damage. ImMrs. Gray denied any knowledge of this suit or any insurance matters for the Northline property generally.[9]
' Likewise, Ms. Price testified in deposition that Mrs. Gray told her that there was no flood insurance coverage on the North-line property, and that she did not have any independent or actual knowledge that this information was false. Thus, it is clear from the record that Mrs. Gray (the client) told Ms. Price (the agent) information about the flood insurance coverage on the Northline property, (that was later determined to be false) that Ms. Price later relayed to the customers (plaintiffs). It is further clear from the record that Ms. Price’s statement to plaintiffs that they could pursue Road Home benefits on the Northline property was derivative of and entirely contingent upon the “information” told to Ms. Price by Mrs. Gray that there was no flood insurance coverage on the Northline property.
This is the precise circumstance to which La. R.S. 9:3894(B) applies. The record does not reflect that plaintiffs demonstrated that Ms. Price had “actual knowledge” that the flood insurance information supplied to her by Mrs. Gray and relayed by her to plaintiffs was false. If plaintiffs had shown that Ms. Price had “actual knowledge” of the falsity of this information, she clearly would not be protected by this statute, and summary judgment would not have been proper.
Thus, upon de novo review, we find that defendants demonstrated that, as per La. R.S. 9:3894(B), Ms. Price did not have “actual knowledge” that the flood insurance information supplied to her by Mrs. Gray and relayed by her to plaintiffs was false. The burden of proof then shifted to plaintiffs, whose evidence did not | ^contradict Ms. Price’s assertion that she had no “actual knowledge” that the information supplied to her by Mrs. Gray was false. In other words, under La. C.C.P. art. 966(C)(2), since the moving parties (defendants) pointed out that there was an absence of factual support for one or more elements essential to the adverse parties’ (plaintiffs’) claim, action or defense (that *109 Ms. Price had “actual knowledge” that the information supplied to her by Mrs. Gray was false), the non-moving parties (plaintiffs) then were required to produce factual support sufficient to establish that they would be able to satisfy their evidentiary burden of proof at trial (that Ms. Price had “actual knowledge” that the information supplied to her by Mrs. Gray was false). Since the non-moving parties (plaintiffs) failed to do so, there was no genuine issue of material fact and summary judgment was properly granted. La. C.C.P. arts. 966 and 967. Accordingly, because no genuine issue of material fact exists and defendants are entitled to judgment as a matter of law, we find no error in the trial court’s grant of summary judgment in favor of defendants. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. THREE

Duty of agents to verify information received from clients

In their final assignment of error, plaintiffs argue that the trial court erred by granting summary judgment in favor of defendants because Ms. Price assumed a duty to ensure that the lack of flood insurance information she volunteered to plaintiffs was correct, Ms. Price breached that duty, and plaintiffs suffered economic damages as a result of that breach.
As noted above, La. R.S. 9:3894(B) clearly relieves an agent of liability for negligent misrepresentation where the agent is told information by a client and communicates that information to a customer, unless at the time the agent communicates the information to the customer, the agent had “actual knowledge 112that the information was false.” This protection to the agent arises because the agent communicated facts received from a client to a customer, not merely because the agent knew those facts. Plaintiffs argue, however, that Ms. Price had a duty to verify the accuracy of the flood insurance information she gave plaintiffs because she knew or should have known that the availability of Road Home benefits was a primary inducement for them to purchase the North-line property.[10]
Upon review, we find that there is nothing in the record to establish that Ms. Price held herself out as having comprehensive knowledge of the requirements of the Road Home Program and how to successfully secure Road Home benefits. Indeed, plaintiffs admitted that they had experience themselves with the Road Home Program, as they had made such a claim on their prior residence, also damaged by Hurricane Katrina. The fact that Mr. Gray executed documents assigning his Road Home benefits claim “if any” to plaintiffs does not tend to show that Ms. Price was doing anything more than accommodating plaintiffs’ request in that regard, in order to aid their application for Road Home benefits.
Legislation is the solemn expression of legislative will. La. C.C. art. 2. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the *110 legislature. La. C.C. art. 9. Upon review, we find that the clear language of La. R.S. 9:3894 strongly suggests that the legislature did not intend to confer on an agent an independent duty to verify information conveyed to the agent directly by his client before relaying that information to a customer. The statute is clear and unambiguous that the licensee “shall not be | pliable” and does not impose any such duty upon the licensee. If we were to read such a duty into the statute, the protections of the statute to the agent would essentially be rendered moot and would undoubtedly lead to absurd and unreasonable consequences.[11] It is equally clear, however, that the statute does not protect an agent who relays information received from a client to a customer if the agent has “actual knowledge” of the falsity of the information. Requiring the agent’s “actual knowledge” of falsity as a predicate to liability, however, falls far short of conferring an affirmative duty on the agent to independently verify the accuracy of all information received from a client before relaying that information to a customer.
This assignment of error is without merit.

CONCLUSION

For the foregoing reasons, we affirm the trial court’s grant of summary judgment in favor of defendants. All costs of this appeal are assessed to plaintiffs.

AFFIRMED.

. Ms. Price was licensed to sell real estate through defendant Prudential Gardner.

. Because of Mr. Gray’s failing health, Mrs. Gray handled substantially all of the dealings required with the selling of the Northline property on Mr. Gray’s behalf.

. The record reflects that plaintiffs ultimately spent at least an additional $1.4 million renovating the Northline property after purchasing it.

. Mr. Gray was the only seller of the property to plaintiffs, as the property was his separate property.

. The record reflects that plaintiffs had no direct contact with Mrs. Gray until after they found out that the Northline property was not eligible for Road Home benefits.

. The record reflects that Mr. Gray individually was the plaintiff in a lawsuit filed against American Bankers Insurance Company to recover additional flood insurance proceeds for Hurricane Katrina flood damages to the Northline property (Gray v. American Bankers Insurance Company, et al., No. 635-685, 24th Judicial District Court, Jefferson Parish, Louisiana). Mrs. Gray was not named as a plaintiff in that suit, because as noted above, the Northline property was Mr. Gray’s separate property.

. On August 1, 2007, Mr. and Mrs. Gray assigned to plaintiffs "[a]ll benefits (if any) from the Louisiana Road Home Program that can be lawfully assigned”.

. Mr. Gray died during the pendency of this suit and the parties agreed to substitute Mrs. Gray, the executrix of his estate, as a party-defendant in place of Mr. Gray. Mrs. Gray also filed a motion for summary judgment regarding her and Mr. Gray's estate’s liability in this case, which motion was heard at the same time that defendants' motion was heard. The trial court denied Mrs. Gray’s motion for summary judgment, which judgment forms no part of this appeal.

. The Grays were both widowed when they married. Mr. Gray had three sons from his first marriage, and it appears from the record that his sons took care of most business matters for the couple, as Mr. Gray was elderly and retired, including the insurance claims on the Northline property after Hurricane Katrina. Evidence in the record shows that the Grays did not return to Louisiana for over a year after Hurricane Katrina struck, during which time his sons initially undertook the repair and renovation of the Northline property with the possibility of using it in the family business, Gray Insurance Company, which Mr. Gray founded but from which he was then retired. However, at some point after Hurricane Katrina struck, the sons’ relationship with the couple soured, resulting in them turning the Northline property back over to the Grays to handle, as well as the sons’ filing of a lawsuit against Mr. Gray for an accounting of his usufruct of their mother's estate.

. Defendants point out in brief that plaintiffs’ argument on this point is undermined by the fact that plaintiffs’ potential Road Home benefits in this case would potentially have been between $105,000.00 and $130,000.00 for the Northline property and thus formed a very small fraction of plaintiffs' total investment in the property as described in the record. Also, there is no dispute that the parties did not include a condition to this effect in the contract of sale of the Northline property.

. In the context of a real estate transaction, the burden that would be placed on the agent if such a duty were to be imposed on the agent (to independently verify all information conveyed to him directly by his seller-client before relaying that information to a prospective purchaser) would apparently be enormous and unreasonable, possibly resulting in undesirable adverse consequences to the nature of the business of selling real estate through an agent.