DA EXTERMINATING CO., INC.

VERSUS

JOHN GARY DISCON AND ACACIA
FINANCIAL GROUP

NO. 24-CA-116

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 823-301, DIVISION "O"
HONORABLE DANYELLE M. TAYLOR, JUDGE PRESIDING

October 30, 2024

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Marc E. Johnson, and Stephen J. Windhorst

<u>**AFFIRMED**</u>
**MEJ**
**SMC**
**SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUB RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
D.A. EXTERMINATING CO. INC.
     Paula M. Wellons
     Samantha P. Griffin

COUNSEL FOR DEFENDANT/APPELLEE,
ACACIA FINANCIAL GROUP, LLC
     Beverly A. Delaune

COUNSEL FOR DEFENDANT/APPELLEE,
UNITED WEALTH ADVISORS GROUP, LLC AND THE ACAIA GROUP, LLC
     David C. Bernard

COUNSEL FOR DEFENDANT/APPELLEE,
AMERITAS LIFE INSURANCE CORP.
     George D. Fagan
     Andrew C. Abrams

**JOHNSON, J.**

Plaintiff/Appellant, DA Exterminating Co., Inc. ("DA Exterminating"), appeals the 24th Judicial Court's December 11, 2023 judgment granting the motions for summary judgment filed by Defendants, Acacia Financial Group, LLC ("Acacia Financial"), United Wealth Advisors Group, LLC ("UWAG"), The Acacia Group, LLC ("TAG"), and Ameritas Life Insurance Corporation ("Ameritas"), and dismissing Plaintiff's claims arising from a failure to process a change of beneficiary form for a life insurance policy Plaintiff held for one of its employees in 2017. For the following reasons, we affirm the district court's judgment.

### FACTS AND PROCEDURAL HISTORY

In 2005, Defendant, John Gary Discon ("Discon"), an insurance agent, sold to Jed D'Arensbourg ("D'Arensbourg"), a co-owner of DA Exterminating, several "key man" Ameritas Life Insurance (then Acacia Life Insurance) policies for employees of DA Exterminating and a few other companies D'Arensbourg co-owned. In May 2017, DA Exterminating submitted a change of beneficiary ("COB") form requesting that DA Exterminating be the sole beneficiary for Policy #4003178404 insuring its employee, John Harrington. In response to an interrogatory, D'Arensbourg could not remember whether he emailed the Harrington COB form to Discon, or mailed it to Ameritas. At his deposition, D'Arensbourg testified that he remembered physically giving Discon the Harrington COB form, but did not recall whether they were at his office or Discon's office. A copy of the Harrington COB form, referred to as Exhibit #7 during D'Arensbourg's deposition, was not filed into the court record[1].

---

[1] During the depositions, counsel and the parties referred to several exhibits that were not entered into the court record. No exhibits were entered into evidence during the hearing on the motions for summary judgment. The only attachments to the motions for summary judgment and the opposition thereto were the petitions filed, the affidavit of Dominick F. Impastato, Jr. (former owner of Acacia Financial), the Assignment and Assumption Agreement between Acacia Financial and UWAG/TAG, the depositions of D'Arensbourg and Discon, and a photo of text exchanges between the two dated May 9, 2017, October 30

On November 1, 2017, D'Arensbourg texted Discon, and asked that Discon confirm that DA Exterminating was designated the sole beneficiary on all of the life insurance policies held by the companies he co-owned, except the policies for D'Arensbourg and DA-Exterminating's co-owner, Chris Caire. Discon responded by text that he was "pretty positive they are all DA[E]" and he would check the policies when he arrived in the office around 9:00 a.m.

Both D'Arensbourg and Discon agreed that they spoke after the November 2017 text exchange, but offered conflicting testimony regarding what they discussed.

D'Arensbourg averred that Discon initially responded that the beneficiary of Chris Caire's policy needed to be changed, and advised him two weeks later that the beneficiary for the policy of employee Gerald Matherne also needed to be changed. Discon did not mention the Harrington policy. At his deposition, D'Arensbourg testified that he received a confirmation that the Matherne policy beneficiary had been changed in November of 2017. D'Arensbourg also testified that, after Harrington's death in 2021, he received a letter[2] from Ameritas confirming the company changed the beneficiary of the Caire policy. D'Arensbourg recalled that an Ameritas employee called him to apologize and told him it was the company's fault, not Discon's, that the Caire change of beneficiary form ("COB") had not been processed when it was sent in 2017.

Discon admitted that he understood he was supposed to change the beneficiaries of all policies that did not list DA Exterminating as sole beneficiary in November 2017. He recalled receiving an email on October 31, 2017 from DA Exterminating stating that its CPA advised that the company needed to make

---

and 31, 2017, November 1, 2017, November 7, 2017, October 19, 2020, March 4, 2021, and April 20, 2021.

[2] The letter D'Arensbourg received to confirm the Caire COB form had been processed was dated November 7, 2017.

changes. At the time he received the text from D'Arensbourg on November 1, 2017, three policies did not list DA Exterminating as the sole beneficiary: namely, the policies for Chris Caire, Gerald Matherne, and John Harrington. Discon testified that D'Arensbourg returned COB forms for the Caire and Matherne policies. He disclosed that he did not discuss with D'Arensbourg the need to submit a COB form for the Harrington policy, but "assumed" that he would do so. Discon averred that what he meant by his November 1, 2017 message to D'Arensbourg was that the COB forms were being processed, but DA Exterminating did not submit the Caire COB form until November 1, 2017, and the COB form for Matherne until November 15, 2017. When D'Arensbourg confronted Discon about the issue regarding the Harrington COB form after Harrington's death, Discon told D'Arensbourg that his office/Ameritas did not have a COB form for Harrington on file. He never told D'Arensbourg that he did not send the form to him.

Harrington died on April 16, 2021. Ameritas denied receiving a COB form for the Harrington policy and, thus, paid 50% of the proceeds to DA Exterminating and 50% to Harrington's estate.

During both depositions, the control dates of the various COB forms submitted by D'Arensbourg were discussed. Discon testified that the control date on the COB form submitted for D'Arensbourg's personal policy in July 2017 was "5/9/17" – the beneficiary for the D'Arensbourg policy was timely changed. D'Arensbourg testified that the control date on the COB form he submitted on the Harrington policy in May 2017, and the COB forms he submitted on the Matherne and Caire policies in November 2017, was "1/18/12." Of the three "1/18/12" control date COB forms, it appears that only Matherne's COB form was processed timely. The beneficiary on the Matherne policy was changed in November 2017, and the company received notice of the change a few weeks after it submitted the

Matherne COB form. After Harrington's death in 2021, Discon attempted to troubleshoot the problem and see if he could help D'Arensbourg resolve the issue in DA Exterminating's favor. Discon's supervisor advised him that Ameritas was questioning the "1/18/12" control date on the copy of the Harrington COB form that D'Arensbourg had found in his records.

DA Exterminating filed a petition for damages on December 2, 2021 against Discon and Acacia Financial. The petition alleged that DA Exterminating submitted a COB form for the Harrington Policy, Policy #4003178404, on May 10, 2017; Discon informed DA Exterminating that Ameritas was questioning the May 2017 COB form "based upon the date of the form"; DA Exterminating paid all premiums of the key-man life insurance policies in full since 2005; and "[d]uring 2018, 2019, 2020, and 2021, DA Exterminating had conversations with Discon regarding renewal of and changes to the key-man policies." The petition also alleged that Discon failed to use reasonable diligence to obtain the requested insurance, listing DA Exterminating as sole beneficiary on the Harrington Policy, and failed to notify DA Exterminating of such. The petition further alleged that Discon's (in)actions constituted fraud under La. C.C. 1953, thereby nullifying any peremptive period under La. R.S. 9:5606. DA Exterminating also averred that the ongoing discussions occurring during each renewal period, constituted a separate tort each renewal period. DA Exterminating contended Acacia Financial, as Discon's employer, was vicariously liable for his acts pursuant to La. C.C. art. 2320 and the doctrine of *respondeat superior*, and prayed for judgment in its favor, including the value of the 50% of the policy proceeds paid to Harrington's estate, attorney's fees, court costs, and any other damages available. Subsequent amendments joined the other defendants under La. C.C.P. arts. 641 and 642.

Acacia Financial filed a Motion for Summary Judgment arguing DA Exterminating's claims were perempted under La. R.S. 9:5606. UWAG, TAG,

Acacia Life Insurance Company, and Ameritas adopted Acacia Financial's motion. The district court granted the motions for summary judgment and orally found that DA Exterminating presented no evidence of Discon's intent to defraud DA Exterminating. This timely appeal followed.

## ASSIGMENTS OF ERROR

On appeal, DA Exterminating argues that Discon attempted to conceal his malpractice, which evidenced his intent to defraud DA Exterminating sufficient to trigger the exception to the one-and three-year preemptive periods under La. R.S. 9:5606. DA Exterminating also maintains that the district court prematurely granted summary judgment as Discon had not fully responded to discovery.

Defendants respond that the district court did not weigh evidence or make credibility determinations in granting summary judgment but found that the allegations made by DA Exterminating were not sufficient to establish a fraud claim. Further, the alleged tortious or fraudulent conduct by Discon occurred in May and/or November of 2017, so any claim against Defendants brought after November 2020 were perempted. Acacia Financial further argues that it cannot be held responsible for Discon's actions because it sold its assets to UWAG in January 2018 through an Assignment and Assumption Agreement, where UWAG assumed all rights and responsibilities under 11 separate contracts with Ameritas producers, including Discon. And, as to any outstanding discovery, Defendants argue DA Exterminating  did not file a Motion to Compel, and did not file an affidavit in support of its opposition describing the additional discovery DA Exterminating anticipated receiving from Defendants.

## LAW AND ARGUMENT

Resolution of this case turns on whether all of DA Exterminating's claims have been perempted by La. R.S. 9:5606. DA Exterminating contends that Discon's actions, or failure to act, constituted fraud, or alternatively, the

Harrington policy renewals with the incorrect beneficiary designations, in 2017, 2018, 2019, 2020, and 2021, constitute a continuing tort, such that its suit is timely. We disagree.

"A continuing tort is occasioned by continual unlawful acts, and for there to be a continuing tort there must be a continuing duty owed and a continuing breach of that duty." *Bihm v. Deca Sys., Inc.*, 16-356 (La. App. 1 Cir. 8/8/17), 226 So.3d 466, 489. In order for each policy renewal to be the basis of a separate tort, the complained of conduct must consist of separate and distinct acts, each of which gives rise to immediately apparent damages. *Biggers v. Allstate Ins. Co.*, 04-282 (La. App. 5 Cir. 10/26/04), 886 So.2d 1179, 1182, *citing Bustamento v. Tucker,* 607 So.2d 532, 540 (La. 1992). If the policy was simply "renewed without discussion, the subsequent renewals were nothing more than 'a continuation of the ill effects of an original unlawful act' with no further opportunity for the agency to make misrepresentations about the policy." *See Branton v. Maddox*, 42,853 (La. App. 2 Cir. 1/9/08); 974 So.2d 190, 194, *citing Biggers, supra.*

> However, courts have refused to uphold peremption when there were annual discussions pertaining to coverage [*Southern Athletic Club, LLC v. Hanover Insurance Company,* 2006 WL 2583406 (E.D.La. 2006), and *Fidelity Homestead Association, supra* ]; when changes requested in the last three years were not made [*Rivera v. State Farm and Casualty Company,* 2007 WL 763633 (E.D.La. 2007)]; and when there were annual requests for—and denial of—additional coverage [*Sonnier v. Louisiana Farm Bureau Mutual Insurance Co.,* 2005–1006 (La. App. 3d Cir.3/1/06), 924 So.2d 419, *writ denied,* 2006–0704 (La.5/26/06), 930 So.2d 33]. The courts concluded that these acts might be construed as constituting separate and distinct acts from the original issuance of the policies involved.

*Branton*, *supra.*

Both Discon and D'Arensbourg/DA Exterminating acknowledge they met or communicated each year as a part of the policy renewal process. However, neither party testified that those meetings included discussions about the beneficiaries of the policies. According to his deposition, D'Arensbourg recalled sending a text to

Discon in October 2020 to talk about the "life policy" and speaking to Discon three weeks prior to Harrington's death:

> Q. Right. I get in 2017.
> But I'm saying in 2018, 2019, 2020, 2021, up to Mr. Harrington's death, do you recall any specific instance where you had a conversation with Gary about Harrington's -the Harrington policy?
> **A. Yes. We spoke in 2020.**
> Q. Okay.
> **A. We spoke three weeks before his death.**
> Q. Okay.
> **A. I'm not sure if it was -- it was probably all the policies. I mentioned Johnny's policy, I'm sure I mentioned all the policies.**
> Q. Okay.
> **A. Cash values and all of that stuff.**
>
> [ * * * ]
>
> Q. And after 2017, did you have any discussions with Mr. Discon about the renewal of Mr. Harrington's policies, the policy on Mr. Harrington's life?
> **A. Well, I renewed them. I'm not exactly sure what the conversation -- what it entailed, but the policy was renewed.**
> Q. Okay.
> **A. The premium was paid monthly until his death.**

(Emphasis in original).

In Discon's deposition, he described creating and annually reviewing a spreadsheet that contained a summary of the "information [D'Arensbourg] would need for the CPA[ . . .] a rundown": policies' cash values, premium payments, and length of time until DA Exterminating would no longer need to make premium payments. He testified further that he did receive an email inquiry about the cash value of the Harrington policy at some point, and the spreadsheet he maintained did not list the policies' beneficiaries.

Although Discon and D'Arensbourg communicated at least annually about the policy renewals, the substance of their exchanges does not support a finding that Discon committed separate and distinct acts with regards to the beneficiaries

of the policies, giving rise to immediate damages. In fact, their testimony suggests that they both initially believed that the May 2017 Harrington COB Form had been submitted and processed by November 2017 at the latest. Because we have determined that the annual policy renewals in this instance did not constitute a continuing tort, preemption *via* La. R.S. 9:5606 applies, without the presence of viable fraud claims triggering the exception in Subsection C in the pleadings.

Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period. La. C.C. Art. 3458. Peremption may not be renounced, interrupted, or suspended. La. C.C. Art. 3461.

La. R.S. 9:5606 provides:

A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.

C. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.

The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

To trigger the exemption provided by Subsection A, DA Exterminating's petition must allege facts sufficient to establish a fraud claim. Fraud is a

misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. La. C.C. art. 1953. Fraud may also result from silence or inaction. *Id.* Fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence. La. C.C. art.1957; *Lomont v. Bennett*, 14-2483 (La. 6/30/15), 172 So.3d 620, 629, *cert. denied*, 577 U.S. 1139, 136 S.Ct. 1167, 194 L.Ed.2d 178 (2016); *Greene v. Gulf Coast Bank*, 593 So.2d 630, 632 (La. 1992).

To establish a claim for fraud, the plaintiff must prove: 1) a misrepresentation, suppression, or omission of true information; 2) the intent to obtain an unjust advantage or to cause damage or inconvenience to the other party; and 3) the resulting error must relate to a circumstance substantially influencing the other party's contractual consent. *Robinson-Carter v. St. John the Baptist Par. Sch. Bd.*, 23-397 (La. App. 5 Cir. 4/3/24), 386 So.3d 1163, 1172, *reconsideration denied*, 23-397 (La. App. 5 Cir. 4/19/24), *reh'g denied* (June 17, 2024). In order to prove fraud from silence or suppression of the truth, there must be a duty to speak or disclose information. *Id.* (citing *Lomont v. Bennett*, *supra*). The specific intent to deceive is a necessary element of fraud, and fraud cannot be predicated upon mistake or negligence. *Robinson-Carter*, *supra*.

Summary judgment may be inappropriate for determinations based on subjective facts of motive, intent, good faith, knowledge, or malice. *Haynie v. Twin Oaks Nursing Home, Inc.*, 17-192 (La. App. 5 Cir. 11/15/17), 232 So.3d 74, *writ denied,* 17-2062 (La. 2/2/18), 235 So.3d 1107 (citing *Jones v. Estate of Santiago*, 03-1424 (La. 4/14/04), 870 So.2d 1002, 1006). Under La. C.C.P. art. 966, the initial burden is on the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, the non-moving party then must produce factual support sufficient to establish that he will

be able to satisfy his evidentiary burden of proof at trial. La. C.C.P. art. 966(D)(1). If the non-moving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La. C.C.P. arts. 966 and 967; *Rabalais v. Gray*, 14-552 (La. App. 5 Cir. 12/16/14), 167 So.3d 101, 106.

In this case, DA Exterminating failed to offer any evidence to support its claims that Discon or any of other defendant acted with fraudulent intent by failing to change the beneficiary on the Harrington policy as DA Exterminating requested in May 2017. Although, at some point, both Discon and Ameritas took responsibility for the failure to account for and process the Harrington COB form, none of the defendants stood to gain an advantage from the error. Even when Discon represented to DA Exterminating in November 2017 that he was sure that all of the policies D'Arensbourg held (*via* various related pest control enterprises), except his and Chris Caire's policies, listed DA Exterminating as the sole beneficiary—a constructive, but mistaken guarantee that the May 2017 Harrington COB had been processed—there was no benefit secured for Discon, Acacia Financial, UWAG/TAG, or Ameritas.

> As a general rule, in order to constitute actionable fraud, the false representation must relate to a matter of fact and such fact must be one which exists in the present or which has existed in the past."

> And "since a fraud must relate to facts then existing or which have previously existed, the general rule is that fraud cannot be predicated upon statements promissory in their nature and relating to future actions nor upon the mere failure to perform a promise or an agreement to do something at a future time, or to make good subsequent conditions which have been assumed. Nor, it is held, is such non–performance alone even evidence of fraud. Reasons given for this rule are that a mere promise to perform an act in the future is not, in the legal sense, a representation and a failure to perform it does not change its character. Moreover a representation that something will be done in the future or a promise to do it from its nature, cannot be true or false at the time where it is made. A failure to make it good is merely a breach of contract which must be enforced by an action on the contract, if at all. And as in the case of promises, it is generally held that mere assertions of intentions or declarations of future purpose do not amount to fraud.

*Brenard Mfg. Co. v. Gibbs*, 119 So. 483, 485-86 (La. App 2d. Cir. 1928) (internal

citations omitted). Therefore, we find that Discon's November 2017 promise to

make sure that DA Exterminating was the sole beneficiary on the policies in

question and his failure to do so do not constitute fraud. Instead, DA

Exterminating's allegations sound in negligence, professional malpractice, a

breach of fiduciary duty, or contract. "[T]he mere existence of a scintilla of

evidence on the plaintiff's position will be insufficient; there must be evidence on

which the jury could reasonably find for the plaintiff." *Berzas v. OXY USA, Inc.*,

29,835 (La. App. 2 Cir. 9/24/97), 699 So.2d 1149, 1152.

Based upon our *de novo* review of the district court's grant of summary

judgment, and viewing the record and all reasonable inferences that may be drawn

from it in the light most favorable to the non-movant, we find that DA

Exterminating has not presented evidence of Defendants' intent to commit fraud

sufficient to create a genuine issue of material fact in this case. *See Rabalais*, 167

So.3d at 105-06. Additionally, since we find DA Exterminating's yearly renewal of

the policy did not comprise a continuing tort, DA Exterminating's claims against

defendants have been perempted. Because we find that peremption applies in this

case, we pretermit discussion of the merits of DA Extermination's claims

regarding vicarious liability.

Last, we find that DA Exterminating's assignment of the trial court's grant

of summary judgment as premature due to incomplete discovery as error is without

merit. While La. C.C.P art 966(A)(3) allows for "an opportunity for adequate

discovery," the only requirement is that the parties be given a fair opportunity to

present their claim. *Dragna v. Terrytown Cafe, Inc.*, 22-241 (La. App. 5 Cir.

10/5/22), 355 So.3d 8. The mere contention of an opponent that he lacks sufficient

information to defend a summary judgment motion and that he needs additional

time to conduct discovery is insufficient to defeat the motion. *Id.*

Jurisprudence has identified the following five factors for the court to consider when addressing an adequate discovery claim: (i) whether the party was ready to go to trial; (ii) whether the party indicated what additional discovery was needed; (iii) whether the party took any steps to conduct additional discovery during the period between the filing of the motion and the hearing on it; (iv) whether the discovery issue was raised in the trial court before the entry of the summary judgment; and (v) whether discovery has been hindered by a circumstance beyond an opponent's control. *Id.* (citing *Roadrunner Transp. Sys. v. Brown*, 17-40 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1273-74). When discovery is alleged to be incomplete, a trial court has the discretion either to hear the summary judgment motion or to grant a continuance to allow further discovery. *Id.* at 1272.

Here, the record shows the district court granted DA Exterminating's request to continue the hearing on the motion for summary judgment to allow the depositions of D'Arensbourg and Discon to take place first. Further, DA Exterminating did not file a motion to compel defendants to produce the outstanding discovery or advise the court of what additional discovery it hoped to obtain before the hearing on the motion for summary judgment was held. Accordingly, we find the district court did not abuse its wide discretion, considering litigation commenced over two years earlier. *See Turner v. Bosley Med. Inst., Inc.*, 19-131 (La. App. 5 Cir. 10/16/19), 280 So.3d 326, 331.

## *DECREE*

Considering the foregoing, the district court's judgment granting Defendants' motions for summary judgment and dismissing Plaintiff's claims with prejudice is affirmed.

**<u>AFFIRMED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **OCTOBER 30, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 24-CA-116

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DANYELLE M. TAYLOR (DISTRICT JUDGE)

JARED A. DAVIDSON (APPELLANT)      PAUL J. POLITZ (APPELLANT)        PAULA M. WELLONS (APPELLANT)
JUDY L. BURNTHORN (APPELLEE)       BEVERLY A. DELAUNE (APPELLEE)     DAVID C. BERNARD (APPELLEE)
ANDREW C. ABRAMS (APPELLEE)        GEORGE D. FAGAN (APPELLEE)

### MAILED

SAMANTHA P. GRIFFIN (APPELLANT)    ROBERT E. KERRIGAN, JR. (APPELLEE)    PATRICK M. WARTELLE (APPELLEE)
ATTORNEY AT LAW                    ATTORNEY AT LAW                       ATTORNEY AT LAW
1555 POYDRAS STREET                755 MAGAZINE STREET                   POST OFFICE DRAWER Z
SUITE 2000                         NEW ORLEANS, LA 70130                 LAFAYETTE, LA 70502
NEW ORLEANS, LA 70112